UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | Case No. 14-13299 |
| Plaintiff, | John Corbett O'Meara<br>United States District Judge |
| v. | |
| SPINE SPECIALISTS OF MICHIGAN, P.C., *et al*, | Stephanie Dawkins Davis<br>United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**ORDER ON MOTION TO COMPEL (Dkt. 66) and MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER (Dkt. 58)**

**I.     PROCEDURAL HISTORY**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") recently filed a number of similar RICO actions against medical practitioners and clinics, alleging that they are submitting fraudulent claims to the insurer under Michigan's No-Fault Automobile Act.  In this case, State Farm has alleged the following claims against defendants Louis N. Radden, D.O.("Radden"), and Spine Specialists of Michigan ("SSOM"):  Count I, common law fraud against both defendants; Count II, violations of the federal RICO statute against only Radden; Count III, unjust enrichment against both defendants; and Count IV, declaratory judgment against only SSOM.  (Dkt. 81).  Defendants filed a counterclaim,

1

alleging that State Farm systematically engaged in a scheme to fraudulently deny, delay, and diminish payment on their claims, as well as the claims of other similarly situated, but not identified, licensed healthcare professionals. The counterclaim alleged common law fraud/fraudulent misrepresentation in Count I, civil conspiracy in Count II, and violations of the Michigan Unfair Trade Practices Act ("MUTPA") in Count III. In an order dated February 22, 2016, Judge O'Meara granted State Farm's motion to dismiss defendants' counterclaim in its entirety. (*Id.*)

On November 24, 2015, Radden filed a motion to quash and for protective order, seeking to quash a subpoena State Farm issued to his accountants for financial information on Radden in his individual capacity, and, by extension, on his wife (by way of joint tax returns and accounts) and for a protective order regarding that private financial information. (Dkt. 58). State Farm filed a response opposing that motion on December 11, 2015. (Dkt. 63). Radden filed a reply brief in further support of his motion on December 21, 2015. (Dkt. 64).

On December 21, 2015, State Farm filed a motion to compel complete responses to its first set of discovery requests to SSOM and Radden. (Dkt. 66). Defendants filed a response in opposition to State Farm's motion on January 7, 2016. (Dkt. 72). State Farm filed a reply brief on January 19, 2016. (Dkt. 73).

Judge O'Meara referred both motions to this Court on January 6, 2016.[1]  (Dkt. 71).
The parties filed Joint Statements of Resolved and Unresolved Issues on February
10, 2016 (Dkt. 78, 80) and oral argument was heard by the undersigned on
February 24, 2016.[2]

**II.   PARTIES' ARGUMENTS**

   **A.   Protocol Evidence Regarding Injection Practices (RFP Nos.7-11, 13, 14; Radden Interrog. Nos. 3-4)**

State Farm seeks to compel SSOM to produce non-patient identifying billing reports regarding defendants' injection practices on non-State Farm insureds, arguing that these records are relevant to whether defendants subjected all patients to certain injection procedures pursuant to a predetermined protocol and alleged fraudulent scheme.  State Farm maintains that these billing records may be produced in a manner that reveals no patient-identifying information. (Dkt. 78).

SSOM counters that producing the medical records of patients who are not State Farm insureds would be an unauthorized disclosure of confidential patient records and that these records are not relevant to State Farm's claims.  (Dkt. 78).

---

[1] Judge O'Meara also referred a third-party's Motion for Protective Order and/or Quash the Subpoena (Dkt. 61), but subsequently that motion was withdrawn. (Dkt. 77).

[2] The dismissal of defendants' counterclaim mooted some of the disputed issues raised in the parties' motions.  This order addresses the remaining disputed discovery issues pertaining to State Farm's claims.

SSOM argued at the hearing that redacting the requested patient records would be unduly burdensome, particularly in light of the questionable relevance of the information these records would provide. State Farm maintains that SSOM's billing software generates reports that may be redacted quickly and easily, as demonstrated by reports on State Farm-insured patients SSOM produced. (Dkt. 66-19, Pg ID 1077-1080). Moreover, State Farm argued at the hearing that SSOM has offered no support for its claim of undue burden, either in the form of an affidavit or specific evidence of the approximate cost of redacting the requested records for production.

    **B.**    **Financial and Tax Information (RFP Nos. 1-2; Radden Interrog. No. 8; Defendants' Motion to Quash/Protective Order [Dkt.58])**

State Farm seeks to compel all defendants, including Radden, to produce their financial, banking and tax records, which are relevant and discoverable in RICO cases, such as this one, involving closely-held corporations because it allows the complainant to (1) assess the financial relationships among the defendants and with nonparties; (2) measure the extent and scope of the fraud; (3) prove motive; (4) identify others who may have participated in the alleged scheme; and (5) prove damages. (Dkt. 78).

Defendants argue that State Farm only paid SSOM, never Radden directly and thus any money Radden received from State Farm will appear in SSOM's

financial and tax records, which have been produced. Defendants argue that money Radden received, directly or indirectly, from insurers other than State Farm is not relevant but is already discernable through the produced SSOM tax records because Radden is the sole member of SSOM. According to defendants, any further expedition into Radden's financial records will only invade private financial information regarding his family. (Dkt. 78).[3]

### C. Employee and Independent Contractor Information (Radden Interrog. No. 1)

State Farm argues that the W-2s produced by SSOM do not contain all of the requested information pertaining to defendants' employees and independent contractors. (Dkt. 78). Defendants argue that it produced all W-2s and 1099s issued to its independent contractors and that those documents supply the names of the employees and contractors, how much they were paid, and how long they worked or provided services for SSOM. (Dkt. 78).

### D. Fluoroscopic Films (RFP Nos. 3, 6)

Finally, State Farm seeks to compel the production of the fluoroscopic films (or the electronic files associated with such films) for the injection procedures at issue, which is relevant to show whether the injections were actually performed

---

[3] These are essentially the same arguments set forth in defendants' motion to quash the subpoena/protective order relating to Radden's financial records from his accountant. (Dkt. 58, 80).

and performed as represented. (Dkt. 78). Defendants have produced DVDs containing copies of the films which are of lower quality than viewing the films themselves, and have offered State Farm the opportunity to review the requested films on the computer at SSOM's office. Defendants maintain that they do not retain the original films, that the machine used to view the films has limited storage and that examination of the films requires the use of that machine. According to defendants, the films stored on the machine cannot be copied well and the images are not as clear as the originals. (Dkt. 72, 78). State Farm argues that defendants should provide a sworn affidavit detailing SSOM's technological limitations regarding the storage and duplication of the fluoroscopic films. (Dkt. 78).

## III. ANALYSIS AND CONCLUSIONS

### A. Scope of Discovery

The Federal Rules of Civil Procedure were written to facilitate the discovery of all relevant evidence. Rule 26 authorizes expansive discovery, provided the material sought has some probative value in proving or disproving a claim or defense. Fed. R. Civ. P. 26(b)(1); *Seven Bros. Painting, Inc. v. Painters Dist. Council No. 22 of Int'l Bhd. of Painters & Allied Trades (AFL-CIO)*, 2010 WL 3385313, at *2 (E.D. Mich. Aug. 24, 2010). Moreover, a court has broad discretion over discovery matters, *Trepel v. Roadway Express, Inc.*, 194 F.3d 708

(6th Cir. 1999), and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and his order is overruled only if the district court finds an abuse of discretion.[4]

As recently revised, Rule 26(b)(1) sets forth the factors that the Court must balance in making decisions concerning the scope of discovery;

> 1) ***Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The relevance of the sought-after discovery items was well set-forth by plaintiff in its brief and at the hearing on this motion. And defendants were unable to seriously challenge the proportionality of the requests in relation to the importance of the issues at stake in this matter, as discussed below. Therefore, subject to the

---

[4] In deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and her order is overruled if the district court finds an abuse of discretion. 12 Wright, Miller & Marcus, Federal Practice and Procedure § 3069, 350 n. 20 (2d ed. 1997 & Supp. 2010) (citing cases). An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *Todd v. RBS Citizens, N.A.*, 2010 WL 3943545, at *2 (W.D. Mich. Oct. 6, 2010), citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

limitations set forth in the remainder of this analysis, plaintiff is entitled to production of the subject items.

> **B.** **Protocol Evidence Regarding Injection Practices (RFP Nos.7-11, 13, 14; Radden Interrog. Nos. 3-4)**

As noted by State Farm, other courts in this district have ordered billing reports, such as those requested by State Farm here, produced in similar RICO actions against medical providers. *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic PC*, 2015 WL 4094115, at *5 (E.D. Mich. July 7, 2015); *see also, State Farm Mut. Auto. Ins. Co. v. Policherla*, 2009 WL 2170183, at *5 (E.D. Mich. July 20, 2009). In *Warren*, the court determined that billing reports regarding procedures purportedly performed on insured patients were relevant to establishing the existence of an alleged predetermined protocol. *Warren*, 2015 WL 4094115, at *5. It ordered defendants to produce those reports, but only as to automobile-accident patients for whom a claim was submitted to an insurance company. *Id*. It further ordered that any potentially identifying information beyond a unique patient number, date(s) of service and CPT billing code be redacted from the produced reports to safeguard the non-party patients' privacy. *Id.*

As in *Warren*, the non-identifying information regarding defendants' performance of the injection procedures allegedly performed by defendants is

relevant to establishing the existence of a predetermined protocol and thus the alleged fraudulent scheme.[5] Although State Farm does not limit its request to automobile-accident patients for whom a claim was submitted to a No-Fault insurance company, the undersigned believes that this limit imposed by *Warren*, along with the requirement that any potentially identifying information from the billing report be redacted, is reasonable. The undersigned finds that the limited amount of redaction required would not be unduly onerous to SSOM, as demonstrated by the similar production it made of its billing records relative to State Farm-insured patients. *See* Dkt. 66-19. Accordingly, SSOM is **ORDERED** to produce non-identifying billing reports regarding defendants' injection practices on all SSOM automobile accident patients for whom a claim was submitted to a No-Fault insurance company. Any potentially identifying information must be redacted from the produced billing reports. *See id*.

    **B.**    **Financial and Tax Information (RFP Nos. 1-2; Radden Interrog. No. 8; Defendants' Motion to Quash/Protective Order [Dkt.58])**

Other courts in this district have addressed this issue as well, and have ruled that the financial and banking records of a closely-held corporate enterprise, the individual defendant(s) who control the closely-held corporate defendant, and even the individual defendant(s)' spouses (in their capacity as joint account

---

[5] Counsel for SSOM acknowledged at the hearing on these motions that *Warren* was not distinguishable from the case at bar.

9

holders) are relevant to establish, *inter alia*, the scope of the alleged fraud, the relationship between members of the alleged fraudulent enterprise and third parties, additional potential parties and witnesses, and damages. *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10572229, at * 3 (E.D. Mich. Aug. 13, 2013); *see also, Policherla*, 2009 WL 2170183, at *6.

In *Physiomatrix*, the court found that the financial and banking records of the individual defendants were particularly relevant to State Farm's claims because the individual defendants were being sued in their individual capacities and because the corporate defendants were closely held by the individual defendants, thus "easily permit[ting] the free flow of money between corporate and personal accounts." *Id*. The court noted that the mere status of an account being jointly held by a party and the party's spouse does not automatically shield that information from discovery; the spouse's confidentiality concerns can be addressed by way of a protective order. *Id.*

Like those in the similar cases cited above, the financial records at issue in the case at bar are relevant to State Farm's claims. SSOM is solely owned by Radden, creating even more of an opportunity for the free flow of money between corporate and personal accounts than existed in *Physiomatrix*. Accordingly, defendants must produce the requested financial records, which they may designate as confidential under the existing protective order, and defendants'

motion to quash/for protective order relating to these records is **DENIED**.

### C. Employee and Independent Contractor Information (Radden Interrog. No. 1)

Notwithstanding defendants' assertions otherwise, the production of SSOM's employees' W-2s and contractors' 1099s does not provide all of the information State Farm sought in its discovery requests. For instance, State Farm requested each employee/contractor's position or job title, a description of his/her duties, last known address and phone number, and the reason the relationship ended. None of this information would be found on a W-2/1099. Accordingly, production of the W-2s/1099s alone is not sufficient to fully respond to State Farm requests. Defendants are **ORDERED** to respond to the interrogatory in its entirety.

### D. Fluoroscopic Films (RFP Nos. 3, 6)

State Farm does not offer any rationale for why defendants' proposed solution to their technological limitations relative to producing the State Farm insured patients' films is inadequate. The undersigned agrees with defendants that, given the technological limitations of SSOM's equipment, permitting State Farm to review the films at the SSOM office satisfies State Farm's discovery requests.

For these reasons, State Farm's motion to compel complete responses to its

discovery requests (Dkt. 66) is **GRANTED** in part and **DENIED** in part. Radden's motion to quash and for protective order is **DENIED**. Defendants must produce the information as referenced above by **April 5, 2016**.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed.R.Civ.P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: March 14, 2016                s/Stephanie Dawkins Davis
                                    Stephanie Dawkins Davis
                                    United States Magistrate Judge

**CERTIFICATE OF SERVICE**

      I certify that on March 14, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov